sitting here in Atlanta. Judge Newsom and I have had a wonderful time here as usual, and the weather has cooperated as well. We're very thankful to have with us Judge Steven Grimberg, who sits only a couple of blocks from here in the Northern District of Georgia. He is a proud graduate of Emory Law School, and he was with us on Wednesday. We're glad to have him back today and very grateful for his assistance. We have two cases to be orally argued this morning. Before we start, you know the lighting system. When the yellow light goes on, that means that your time is starting to draw to a close, so begin to wrap up. If we take you beyond the red light, and we've done that a lot this week, don't worry about it. Just keep going. Our first case is No. 22-11504, Charles Bedgood v. Wyndham Vacation Resorts, et al. Mr. Sager. Good morning, Your Honors, and may it please the Court. This is a somewhat unusual situation or setting for arbitration in that both parties, the plaintiffs and the defendants, agreed that they had arbitrated and attempted to submit their case to arbitration. What's unusual about this case is that it was not either of the parties that frustrated the effort. It was that the AAA decided to reject the arbitration and the AAA that decided not to elaborate on the reasons why it rejected the arbitration. Well, but it did say, right, that it was rejecting arbitration because your client was in violation of the rules, right? It said that we were not in compliance with their policies, but it did not articulate which policies those were, Judge Newsom, and while we can assume or we can extrapolate from other cases that we think we know, the arbitration administrator never elaborated on what those reasons were in these cases, and we don't know as we sit here today. Anything we surmise is just that, an assumption. Well, there are some cases from other jurisdictions which say that failure to pay the fees of the arbitral source can be a basis for rejecting an arbitration claim, right? Absolutely, and we don't quarrel with those cases. So how do we set aside the district court's order without knowing the reason for your client's alleged violation of the rules? Well, I think, Judge Jordan, we can start by saying the district court's opinion should be set aside precisely because there was no finding as to what the reasons were. Did you put forth a reason? We don't know the reasons because— You haven't asked the AAA? The AAA? No, I have not asked the— Not you, but your client. I do not believe so, and the arbitration was rejected, and the lawsuit was filed. I'm stepping back for a second and looking at this from, you know, a high altitude. It strains common sense, and this has nothing to do with your legal position here today. It strains common sense to think that an entity like Wyndham or any other entity which the AAA thinks is in violation of some policy or rule doesn't engage in communication with the AAA to figure out what the alleged problem is to see if it can be solved or to see if the AAA made a mistake or the like. That just strains common sense. Well, I can say, Your Honor, that there is no evidence whatsoever that it has anything to do with an administrative matter such as fees. What we have from other cases that plaintiff has submitted is that there's a reference to the form selection clause, and we would say that the AAA's finding in those other cases was incorrect, and there's a reference to a limitation of liability provision. But there's no issue that I'm aware of, and there's certainly no issue in the record, as to fees. And I think that distinction is critical, because we expect an arbitration administrator to make determinations about administration. If someone does not pay fees or frustrates the arbitration by not complying administratively, it makes sense to have a gatekeeper. Why isn't that exactly what this case is? I mean, I don't understand how the fees issue is any different. I mean, from my perspective, and I want you to try to explain to me why I'm wrong about this, it seems to me that the AAA has made a determination that your client did frustrate the arbitral process by refusing to comply with policies. And the rules say that, you know, consideration of whether there's been material compliance with the due process standards, determinations of whether to administer arbitrations pursuant to the clause is an administrative determination for the AAA. Under the rules you bargained for, that you demanded, frankly. That's what the commercial arbitration rules themselves say. In this case, Your Honor, the arbitration provision expressly states that where there is a conflict between the arbitration provision and the consumer rules, the party's contract controls. And that is a distinguishing factor. So the parties did not, in this case, agree that whatever the AAA says goes. What the parties said was we will be bound by the consumer rules unless those consumer rules stand at odds with what the parties have in their agreement. And that's precisely what we have. There's another important distinction. So when you say that's precisely what we have, what's the that in that sentence? The dispute before the AAA is, or that the AAA is raising, is that we are suggesting an application of law that the AAA does not agree with. It has nothing whatsoever to do with whether we're participating in the arbitration. The AAA has made a judgment that their view of the law of the state of Florida or the FAA should be substituted for what the actual law is. Just so I'm tracking, when you say the law, the law of the state of Florida, the law of the FAA, what are we talking about? I mean, I thought we were really talking about whether or not you were in compliance with AAA policies. I thought they found you, for whatever reason, in violation of their policies. Not the law, but their policies, and thereby said we're not doing this. Again, we don't know, but let's assume from reference to other cases that one of the policies that they think that we are in violation of is that our limitation of liability provision conflicts with Principle 14 of the principles that have been articulated by the arbitration, by the American Arbitration Association. I will assume that for sake of argument today. What's Principle 14? Principle 14 refers to available remedies and states the arbitrator should be empowered to grant whatever relief would be available in court under law or in equity. And in another case that we have no record of here, but plaintiff has submitted, we know that the AAA said one of the principles that was violated was Principle 14. And what I'm submitting to you today is that our agreement, our limitation of liability provision, stands or falls based on reference to law, not based on what the AAA views what the law should be. The parties agreed that an arbitrator would decide that issue subject to law. The contract specifies that, and what the AAA is doing, and why this case is so important and its ramifications are so far reaching, is the AAA is saying their view of the law should substitute for what the law actually is, and that's exactly. But the AAA is doing no such thing. It's a court that's going to do that. The AAA is just saying, we're not arbitrating your dispute. It's not trying to bind you in any way. It hasn't submitted an amicus brief here saying, you know, what we say goes and you're bound by what we say. They're running an administrative shop that provides a service, and they think you can't play in the playground because you violated a rule or policy. They're not trying to do anything independently. The question, I think you're right, the question is a legal one, but the AAA is not trying to do anything in this case. They just refuse to arbitrate. We're actually not sure if they refuse because there are several submissions that show that where ordered, where a court has issued an order under Section 4 of the FAA, that the AAA will take a case, including a case against Wyndham. Let me ask you one question, and then I'll be quiet. Arbitration initially is a matter of contract, right? Correct. You and the timeshare plaintiffs bargain for the AAA rules, and one of the AAA rules in the Consumer Arbitration Rules, I think it's Rule 12, says, if the AAA declines to administer a case due to the business's noncompliance with the notification requirements set out in this rule, the parties may choose to submit their dispute to the appropriate court. Why isn't that the end of the case? Because it allows the AAA administratively to be the gatekeeper of whether a case is arbitrable or not. It reverses all of the authority on who gets to decide the threshold issue or how the issue is decided, and if that were the law, any time and for any reason the AAA says, we don't want to hear it, a party would be in litigation. Not if you have a provision in the contract that says, should the entity we've chosen refuse to arbitrate, a substitute arbitrator shall be appointed. You don't have that clause in your agreement. And respectfully, Your Honor, I don't think we need it because we have Section 5 of the AAA, which allows and provides for the appointment of a substitution, a substitute arbitrator, because I take Your Honor's point. But just so we're clear, only when, as one threshold condition, the arbitral forum is unavailable. And then the question becomes whether you can unilaterally render the forum unavailable by refusing to comply with its rules. We don't know. I don't know, as I stand here before you, whether the arbitrable forum is available or not because the AAA has not said. It has only said we reject the arbitration. So we have two options. With respect to these plaintiffs and any other plaintiffs engaged in business with Wyndham, because Wyndham doesn't comply with our rules, correct? Correct. And what we are saying is if the arbitrable forum, the AAA, is unavailable, then— By your unilateral action. And I have to pause there. Absolutely not. We've taken no action. Well, you've—I mean, the AAA has said that you have refused to comply with its rules. It hasn't specified the reasons, but it has made a determination that you're out of compliance. And so we're not adjudicating your dispute. I agree with Your Honor that that's what they've said, but it's, from my perspective, somewhat circular. If all the AAA needs to do is say we're not taking it, then— Because? They didn't say we're not taking it. They said we're not taking it because Wyndham is out of compliance with our rules, correct? Correct, with our policies. Now, if those policies were fees and they had articulated that, we would be talking about one very long line of cases, and I would have no quarrel with the notion that we failed to participate by refusing to pay fees. That is not the fact. Why are fees so special, just so I'm clear about this? Because the courts over the period of time, over a period of time, have interpreted fees as a gatekeeper function. If you refuse to participate by paying fees, the courts have said uniformly in all the cases that plaintiff relies on, that that is disqualifying, that you can't simultaneously say you're availing yourself of arbitration but refuse to perform administrative tasks relevant to the arbitration. I will tell you, just speaking only for myself, I do not understand this sort of bright line that you're trying to draw between fees and all other policies, rules, whatever we want to call them, that you can sort of, with impunity, violate all of those, but if you cross the fees line, now that's somehow special. I just don't really understand that at all. Your Honor, to be clear, we don't think we can violate anything. An arbitrator or, in certain circumstances, a court can make a determination. The problem in this case is no one has made that determination. That issue of the policies and not the rope policy, what I would submit as a rope policy of fees, the policies of limitation of liability or form selection, no arbitrator, no judge has addressed that. All we have is a letter from the AAA, and if the AAA has that authority, then we're going to be in this circle in any number of cases going on and on in time. But you don't deny, right, that the court, I recognize that you dispute that the court here deferred to the AAA's determination that you were out of compliance with the policies. You don't like that. You think that either an arbitrator or the court de novo, so to speak, should have made that determination. One of those two things. But you don't deny that for what you would consider to be like a core administrative matter, fees or otherwise, that a court could defer to the AAA's determination with respect to that. The AAA says, I think you just said this, hey, they haven't paid the fees, so we're not doing this. Then a court could say, we will take on face value the AAA's determination that you have not paid the fees, and we're deferring to that determination, right? And that is the law of this circuit and has been for some time, whether it be the Freeman case or is recognized in others in Brown. But in Casper's, the court articulated a distinction. This court articulated a distinction. Just to be fair, in an unpublished opinion which binds no one, right? But we use what we can, and the distinction is made in there. But here, if there was a record, any record of fees, we would be talking about that. And maybe we would quarrel with the AAA and say, well, we wrote the check, and here's the canceled check, and you did get it. We would have that discussion. But that's not on the table because the AAA never said it. There's been no illumination as to what the reason is from the AAA. We can only surmise, and again, Your Honor, because I appreciate the frustration with the tension between what's the difference between a fee and a policy. One is empirical. One is a matter of judicial application or arbitrator application. When one goes to the AAA, they are agreeing to have a neutral, an arbitrator, not an administrator, decide these questions. Decide the merits of the dispute, right? But there is a distinction you'll recognize between sort of merits issues and administrative issues. And you're, I think, just asking me to take as gospel the fact that fees are somehow permissibly administrative and the other things, whether it's choice of forum, damages, sort of limitations, whatever, those are not administrative. Those somehow run to the merits, the thing that the arbitrator would do. I certainly am not asking you to take my word for it, but the law in this circuit and others is clear on the point that courts do treat the fee issue differently, and each and every case that plaintiff argues from is about fees. So are there cases, I take your point that our case law says fees are administrative, if you'll allow me just to sort of put things in buckets. There's the administrative bucket, the merits bucket, fees are administrative. But do our cases say fees and only fees are administrative? The cases have not articulated from my reading of them in any sort of routine fashion, any other basis. But, for instance, there is a case, and I apologize, I can't remember the site, it's in the papers, where one of the parties to the arbitration refused to get back to the AAA. They refused to participate. It was empirical. They didn't do what they were supposed to do. Now, the difference, and here is where we are not suggesting for a moment that our view of what a limitation of liability provision should be is a matter for us to decide, and we are simultaneously not saying that it's a matter for the AAA as an administrator to decide. All we are suggesting is it is absolutely not for the AAA to rewrite law and say, here's what we're going to do. If you don't comply with the law as we want it, not as it is, we will not recognize you as a participant in arbitration. Now, that's fine. The AAA, you are exactly right. The AAA can make its own policies as to whether it will accept or not accept arbitration. But what shouldn't happen is that the AAA's exercise of policy judgments become the gatekeeper for whether a case is arbitrable or not. That's what we object to. Can I ask you a question? Let's assume the district court appoints a substitute arbitrator, right? And Section 5 says you, and that arbitrator proceeds under the agreement, right? The agreement says the AAA rules. The arbitrator decides you violated the AAA rules. What then? Well, two things. I would absolutely have a much harder argument because I would have to seek to reverse the arbitrator and say the arbitrator has done something that we all know to be a much higher policy. No, and refuses to arbitrate. Oh. You've told me, you've appointed me a substitute arbitrator. You've told me to proceed under the agreement. The agreement tells me to proceed under the AAA rules, including the consumer arbitration rules. I find you violated the AAA consumer rules. I'm not arbitrating. I would have a right of appeal to that, and I would be able to argue to a court. Of course you would appeal. My question is, what do we do? I would come in. Arbitrator number three. Well, if a court determined that the arbitrator had abused authority or something. In my hypothetical, the arbitrator gets it exactly right. The arbitrator makes a finding that you violated, you Wyndham, violated some integral policy of the consumer rules, and as a result, he refuses to arbitrate. He's like, I'm done. I apologize. If we assume he's right, then we lose. But in that instance. So if Wyndham is right now, you lose. Same thing. I'm not following why. If Wyndham is right now about your having violated a rule. Not Wyndham. You lose. I'm sorry. Yeah. If the AAA is correct that you violated a rule, you lose now, because that's the exact same scenario as my hypothetical with the substitute arbitrator. If an arbitrator determines that we violated a rule and that, therefore, we are not eligible to be before the AAA, then we are bound by that determination. But there's a very critical distinction. So if an arbitrator gets appointed now and says we agree with the AAA that you violated a rule and we shouldn't arbitrate, you're done? If the arbitrator makes that judgment based on submission. Of course. Or court is now bound and defers to that decision? Subject only to my appellate rights, because I've got an arbitrator. That's what I've bargained for. But I would just point out the distinction that in this contract, the AAA's rules do not apply. They apply only if they are not in conflict with the arbitrable agreement or the arbitration agreement. So it is not the case that the party is in this agreement. It's not disputed. But I don't understand what the conflict means. The conflict means. When a conflict makes a rule inapplicable. Not at all. What I do is I say that our agreement is subject to law. And if we put something in that agreement that is compliant with the law, it is not for the AAA administratively to say we disagree with the law. Irrespective of what you said or did, Wyndham or any other participant. We disagree with that law. We are going to exercise our own judgment and supplant a court's judgment or a legislature's judgment with our own. That's what we suggest they can't do. And the distinction here, and the cases make the distinction important, is if what we said is AAA, whatever you do, we're on board. We subscribe to your rules lock, stock, and barrel. We would have a much different and harder argument. But we expressly didn't say that. In the arbitration provision, the parties agreed and plaintiffs don't contest that the AAA rules do not apply if they're inconsistent. And again, what we're talking about here is not us doing something unlawful. What's inconsistent with a finding that you violated an administrative policy or rule and that the AAA is not going to arbitrate? What's inconsistent between that and your arbitration agreement? The inconsistency is that the AAA is administratively making the judgment without any findings, without any explanation. Findings, but we don't know that. But I think for purposes of us being here today— And you've told me that Wyndham hasn't asked. They don't really care what the reason is. We absolutely care, but we've simultaneously— Haven't asked? It has been—it is a matter of record that in other cases where they've been— I'm not talking about other cases. Yeah, you are correct that I can't tell you as of right now. That doesn't make any sense to me whatsoever. Yeah, so again, now we're back to you sort of unilaterally sabotaging the process. Now it's by simply refusing to ask what the reasons are? No, I want to be really clear on this. We're not sabotaging a process. We are ready, willing, and able to participate in arbitration. We have done nothing other than to, according to an administrator, fail to comply with policies to frustrate arbitration. We have done nothing affirmatively. We are ready, willing, and able, as is plaintiff. Only the AAA is unwilling, and the CFIO case makes it very clear that that's not good enough. The AAA doesn't enjoy that. Now, if the district judge had appointed a substitute arbitrator, we'd be back in arbitration where everybody agrees we should be, or if the district judge ordered the AAA and the alternative to take it, and the AAA said, you know what? We now have an order, which we know they sometimes do. We will take it. We'd all be back in arbitration where we all agree we should be. That's what's unique. Why are we here? We're here because the AAA, and only the AAA, decided we should be here. Except that the AAA gave a reason. The AAA didn't say, you know, we've cast lots or we've flipped a coin. We've just decided arbitrarily that we're not going to do it. It said we're not going to do it because Wyndham is out of compliance with our policies. And I agree with you that they made that statement. But the law in this circuit and throughout the country says that which policies are at issue matters. Now, there are arguments to be made and analyses to be done, but the courts uniformly say that what policy is relevant. And is this the fees versus the universe line that you're drawing sort of? It's the administrative issue versus the exercise of judgment, of legal judgment, and supplanting the will of courts and legislatures because the AAA simply says we don't like it. All right, so let me ask you this. So I think I'm beginning to understand your position is that things that are empirical are properly administrative. Things that aren't empirical and that require some exercise of legal judgment are not properly administrative. Is that roughly? Roughly, and I think what it goes to is interpretation of the provisions of a contract. When parties agree to arbitrate, what they are saying is we want an arbitrator, or if they don't delegate, a judge with the assistance of an arbitrator, to tell us what our contract means and entitles us to. So just so I'm clear, and I recognize this may not be in the record in this case, but, you know, one noncompliance that has been alleged in other cases is that you insist on venue in Orange County, California, correct? Correct. And that the AAA rules require alternative venues, is that right? Correct. Does that require the exercise of legal judgment, whether something is or is not Orange County, California? That sounds pretty empirical to me. It does for two reasons. The first reason is if we are permitted under state law to designate an exclusive forum, then I would submit to you that the AAA cannot use its judgment, sound or otherwise, to overrule that. But here, that's not what the agreement says. The agreement actually says that the arbitration shall be held in Orange County unless the parties agree to another location, or the arbitrator decides to hold a telephonic hearing, or the arbitrator decides, and I just input those words, the arbitrator decides, I don't want the record to be unclear, or the arbitrator decides to designate another location reasonably convenient for the parties. The agreement does not say it has to be in Florida, and that's exactly why this is so problematic. If we had a judge or an arbitrator looking at the agreement and applying the law, the arbitrator or the judge would have two options, to say that it's valid and enforceable as written or not. But what we have the AAA doing here is saying, I'm only going to read the first sentence if, in fact, this is what they did, and again, we don't know. I'm going to read the first clause in the sentence, and I'm going to stop reading. And because I stopped reading, I'm going to foist on the courts a dispute that the parties agree should be arbitrated. Let me ask you one final question, and then we've taken you way over your time, and we'll give you all of your rebuttal time. You concede, I think, that fees are a different animal, right? I do. Okay. So let me ask you one other possible, if we write in your favor in this case, we have to announce a principle and figure out how it's going to play out, not only in this case, but in cases going forward. So let me ask you a question to see the limits of the concession. A set of arbitration rules, maybe not the AAA, but whatever arbitration rules the parties bargain for, say, each party will suggest an arbitrator from our pool of arbitrators, and then the body, whatever body it is, will choose one of the two. The business, in my hypothetical, refuses to suggest an arbitrator, and the body says, you're not playing by the rules, we're not arbitrating any more of your cases. Is that like fees, or is that not like fees? I think it's more like fees, but I think the arbitration administrator would have two options. They would say, I only have one choice because you didn't give me one, I'm appointing the one choice, or I think the arbitration administrator could fairly say, you are not participating. You are not involving yourself in a process that you profess to avail yourself of in a contract, and therefore we are unwilling to continue the arbitration. It's unavailable to you. I think either would be acceptable, and, yes, I do think it's more like fees. So more like fees. as opposed to a difference in legal judgment, and what is acceptable and not. May I ask one question before you sit down? Of course. The first remedy that you've requested is the position that both sides are available, and so AAA should be compelled to arbitrate, notwithstanding their administrative denial. I understand from Casper's and other cases, and AAA's policy is that they would comply with an order, but AAA is not a party to this case. They have not been brought into this case. So what jurisdictionally, how can a court compel AAA to hear this case if they don't want to? I don't think you can. I think the answer is that this court could exercise its discretion in the alternative, or the district court could exercise in the alternative and say, we believe the case should be arbitrated and we're ordering it to proceed in arbitration, and if the AAA is unwilling to take the case, then we will appoint a substitute arbitrator. And the reason for the spilled ink that was referenced in the decisions below is we still don't know whether the AAA is available or not. To a point Your Honor made earlier, the AAA absolutely has the discretion to say, we won't take it. But they haven't said that, and they've indicated the opposite. All right. Thank you very much. Thank you, Your Honors. Thank you. Prosnitz? Yeah, Prosnitz. Okay. Whenever you're ready. Good morning, Your Honors. Howard Prosnitz for Plaintiffs Appellees. If I was a wise man, I would probably say nothing, but as a proud graduate of Stanford Law School, I feel I should talk. And one other personal note, my daughter was actually in this court a couple of months ago on her first argument. This could be my last, so it's a pleasure to be here. So let me go directly to some of the points in counsel's argument. This idea that we do not know why the AAA did what it did is not correct. In the Reynolds opinion, which is part of the record, at... Yeah. Here's part of the issue. We can judicially notice other opinions for what they ultimately decide, but our law is that we can't judicially notice facts determined in those proceedings, because that causes all sorts of due process issues. So we can take judicial notice of the fact that a district court in North Carolina refused to arbitrate a Wyndham case. Absolutely. But if that court took evidence and makes factual findings about why Wyndham violated a AAA policy or whatever, we don't adjudicate that as given because it creates all sorts of problems. In this case, it's helpful to you, but in the future case, it could be really detrimental to you. But, Your Honor, this was not any type of fact finding by the Reynolds court. This was the Reynolds court quoting an admission from a Wyndham brief where the Wyndham brief admitted... Okay. Well, all right. Then I'll forget about that one, Your Honor. No, I don't want to fight with you. I just want to explain the problem. The problem is that what's good for the goose is good for the gander, and picking and choosing findings from courts and other places without the parties who are here having been there creates all sorts of issues. All right. I understand. So we'll just leave it that Wyndham apparently has not asked, and we don't know, other than the letter itself from the AAA, which says you do not complain about... In this record, that's all we have, right? Correct. Correct. So why is that enough if we don't have the... We do have a reason, like Judge Newsom said. We do have a reason. We don't have the sub-reason, like you violated this policy. Because we don't need it. It's an administrative... It was just an administrative decision. The administrative rules were incorporated into this agreement. The Freeman case, I think, is very important. I didn't develop that enough in our brief, but they characterized the Freeman case just as a fees case. It was not just a fees case. It was this alleged inconsistency that the company was making the same type of argument that Wyndham is making of an alleged inconsistency where the company had an arbitration agreement providing for sharing of costs, and the consumer rules of GM said the consumer shall only pay up to $250. And the company said that's inconsistent, so we refuse to go ahead. We're not going to pay the fee because we will not waive that provision. And the trial court used the word default, and this court also agreed that that was a type of default. So we're not... I would just urge you to take another look at the Freeman case because it's not simply a fees case. And the other... Here you have... Your agreement has a clear and unmistakable delegation provision as to the arbitrarility of the dispute. Correct. So how could the district court have decided default given the arbitrability of it should be decided by an arbitrator? The question goes to the meaning of the word default. The district court felt that failure to follow rules is a default, and that actually was the same language in Freeman. Failure to follow rules is a default. But the important point here is there was no threshold issue of arbitrability. Both sides agreed to arbitrate. All we're talking about is administrative rules. As Judge Jordan correctly pointed out, if Wyndham thinks these rules are bad, they're free to designate another forum. If they want to substitute arbitrator, they're free to designate another place to go. And I think there's an important admission in Wyndham's reply brief where they say that the AAA is free to decide which cases it wants to hear, but it is not free to void an arbitration agreement. We agree. But the clause also says, in the event of any conflict between the AAA rules and this agreement, the provisions of this agreement shall be controlling. They agreed to that, and your clients agreed to that. But we don't see that as an inconsistency. An inconsistency would be if the Wyndham arbitration agreement said, AAA has to take this case no matter what. That would be an inconsistency. But here, Wyndham incorporates those very administrative rules into its agreement. Not being in conflict. Well, I guess we just don't see the conflict. I mean, if the AAA decided administratively that it wasn't going to take the arbitration of these three timeshare plaintiffs because it didn't have the capacity. Like, listen, we're swamped. We just can't do this. And we can't do it for the foreseeable future. It'll take us five years to catch up with the backlog. We can't do it. We refuse. Hands off. Right. Where are you? If they can't do it? They say they're not doing it because right now, administratively, they don't have the capacity to do it. They're just overwhelmed with cases. They've lost arbitrators. They've lost employees. We just can't do it. It would take us five years to get to your case, so we're stepping out. We can't do it. I guess we would say the problem is the way Wyndham drafted its clause. You picked the AAA. You made absolutely no provision for a substitute. You could have designated another forum. You should rewrite your clause. But in that scenario, see, I'm not sure I agree with that. Okay. I'm sympathetic to your general position, but I'm not sure I agree with that because in that case, it's very hard to argue that Wyndham or the timeshare plaintiffs are in any default or have done anything wrong or anything inconsistent with arbitration. They're trying to get there, but the body says, eh, we just can't do it for you. Sorry. All right. Let me counter with a hypothetical of my own, which is let's see. I'll do my best to answer. Okay. Let's suppose that Wyndham had drafted this clause just like Casper's, and they said we shall or the parties shall agree on a substitute if the AAA declines, decides not to hear it. Okay. AAA decides not to hear it. We are now in front of a substitute. Could I go in front of the substitute and argue the AAA has decided this is not arbitrable, the AAA has voided this clause? Absolutely not. So there's been no substantive decision on arbitrability. Gateway issues of arbitrability relate to whether the agreement is valid, whether it's enforceable. There's been none of that in this case. But in my hypothetical, doesn't Section 5 easily kick in? And I'm quoting, if for any other reason there shall be a lapse in the naming of an arbitrator, ellipsis, then upon the application of either party, ellipsis, the court shall designate and appoint an arbitrator, ellipsis, who shall act under the agreement with the same force and effect as if he had been specifically named. You're absolutely right. I stand corrected. You're absolutely right. In that case, the AAA, a substitute would be okay. But here, both the district court and the magistrate agreed the AAA was available. Can I ask you to address Wendham's argument with respect to a couple or a few of the plaintiffs who didn't even try to arbitrate? Right. Why didn't they, within the meaning of Section 4, I think it is, fail or refuse to arbitrate, rendering Wendham aggrieved with respect to them? Well, they've seen this history. They felt it was futile. I mean, they could go back and make the demands, but based on what's happened again and again and again, their arbitrations would not be administered. So here's the issue I have with that aspect of the case. Right. We don't know the specific, specific reason for the alleged violation, right? Right. We know that they violated a policy or rule according to the AAA, but we don't know which one. Right. Sometimes those violations, assuming it is a violation, those violations of policies or rules can be corrected. Sometimes they can't. Sometimes it's just intransigent on the part of an entity. So if it's the type of, and we don't have anything in the record to tell us the subspecific reason, why are we to presume, one way or another, that this violation can't be corrected going forward? Maybe Wendham has seen the light and said, oh my God, we better correct this because if not, we're going to have all these cases going into federal district court or state court, and we don't want that. So let's make a corporate decision. Let's fix the problem. Let's tell AAA we'll do good, and now AAA will take our cases. That would be fine with me, Your Honor. Okay. If that's the case, then why, and we don't know the reason. Right. And we don't know what Wendham's reaction is to the finding by the AAA. Why shouldn't the other timeshare plaintiffs go to the AAA, say we have a matter for you, have them say, nope, still a violation, still not doing it? Well, my guess, based on history, is it will get it going. But, you know, I would not be upset if that were to happen because that would either mean we'd be back, either the same thing would happen again, or Wendham would fix the clause. So that would not upset me. Can I follow up on Judge Newsom's question? As to the plaintiffs who did not make the request to arbitrate, did AAA ever deny an arbitration request against WorldMark? Yes. It's in the record at page ID 299. And also, WorldMark is not on the approved list of companies for whom AAA will administer cases. Thank you. I think our bottom line argument got through, which was if you want to arbitrate, you should be able to arbitrate. You shouldn't have to also sue in federal court. That's our one-sentence synopsis. And Mr. Bedgood is here in court. I listened to a panel with Judge Newsom saying sometimes we forget about real people. Well, there are real people in this case. One more question before you sit down. One of the arguments that Wendham makes is that an arbitrator, whoever he or she is or whoever they are, has to decide whether or not Wendham violated a AAA policy or rule. That's one of the arguments. So if you could respond to that, please. Well, it goes back to the fact that this is an administrative rule. Wendham agrees it adopted the administrative rules. You read the administrative rules during Mr. Sager's argument. Wendham agreed that the AAA would administer according to its administrative rules. So there was no, quote, policy decision. In essence, what they're asking you to do is they're asking you to rewrite the AAA rules by saying these are somehow void against public policy. I mean, that's kind of what it comes down to, that they don't like the AAA rules. They think they're void against public policy, but this is not the Arbitrator or a judge to make that decision. Right, but I guess it goes back to just saying this was just an administrative decision in our view. Can I ask one quasi-related question? Another argument that Wendham makes related is that our precedent makes arbitrability a question for an arbitrator and not a court, right, let alone an administrator. And so what about that? The first part of the question. Sorry, our precedent. In particular, you know, the case, the name of which is now escaping me, but our precedent, Addix, makes the question of arbitrability a question for an arbitrator and not a court. Addix was in a different posture. Addix started in court. The district court in that case did make a substantive ruling on arbitrability based, I believe, on the Dodd-Frank Act. So there was a fundamental issue of arbitrability in that case that got decided by the district court rather than the arbitrator. Our response is both sides agreed to arbitrate. Our client did not contest arbitrability. So there was no similar threshold decision about whether the underlying matter was arbitrable or not. That, I think, is your strongest response to that question, which is this is not an arbitrability issue. Everybody agrees that this matter is arbitrable. Right. The question is what happens as a result of Wyndham's purported violation of a AAA rule or policy. But everybody agrees. You're not fighting the general notion that your dispute is arbitrable. No. And neither is Wyndham. We're for arbitration. Okay. There's an adage, quit while you're ahead or at least haven't dug yourself into a hole. Or quit when your time is up. Or quit when your time is up. Thank you. Thank you. Your Honors, first I'd just like to address the issue that you raised, Judge Newsom and Judge Greenberg, regarding the five of eight plaintiffs who did not pursue a remedy or pursue arbitration. I'm not aware. I very well may be corrected. I'm not aware of any record that arbitration involving Worldmark has been brought or rejected by the AAA. And I have no basis to opine if that has happened on what basis. There's no document I've seen. And if I have, it's escaped me. But I'm not aware of that. And the issue actually matters. Because what the request of plaintiff is tantamount to saying that any individual who is subject to an arbitration agreement that is substantively identical to the one at issue here, whether with Wyndham or not, is from this point forward not required to go to the AAA. From this point forward can simply file in federal court. And I don't think that's a tenable or legally justifiable position for the plaintiffs to take. Now, my head is not in the sand as to the issue Judge Jordan mentioned, that we can all read what has happened in other opinions and we can be informed by it. But I will finish this point the way I began today. We still don't know what those reasons are and whether those reasons are consistent. We don't know whether Wyndham has changed. We don't know whether the AAA has changed. Can I ask you a question? Of course. Do you think that we talked about fees and I think you've agreed that fees are a different animal, failure to pay fees are a different animal. If a court can declare a party in default for failure to pay fees, why can't it declare a party in the right case in default for violating some other provision? The structure of review of arbitration provisions, particularly those that delegate decisions of arbitrability to the arbitrator, have external factors that external to the arbitration and internal. And the answer to Your Honor's question is that in this instance, the way the district judge addressed the issue was internal to the working of the arbitration provision, not external in the capacity of unconscionability. So the well-worn standard on this issue is But the failure to pay fees is not unconscionable. If you fail to pay your own fees, that's not unconscionable. That's just a failure to comply. I agree with Your Honor, but what a party cannot do is simultaneously say that it wants to avail itself of a process and refuse to participate in the process. That is, to me, legally and factually untenable. Right, and my question to you is, if we're in that small bucket, according to you, of fees and maybe refusal to suggest an arbitrator, right? Does a district court get to make that call? A district court in that circumstance has made that call, and the answer is yes. So why can't it make other calls about defaults, alleged defaults? Well, the district court would go through, I would expect, the same analysis to decide whether the issue that's before it has been properly delegated to an arbitrator or not. If the district court goes through that analysis and determines after analyzing it that it has the legal authority under the FAA to make that determination, then the district judge can do that. Why is this dispute about arbitrability in the large sense? Everybody agrees that the matter should be taken to arbitration. There's no dispute at the initial threshold stage about whether you go to arbitration or whether you're properly in a state court or a federal court. The dispute is about what happens when the AAA makes this determination administratively. I'm glad you asked that question because this whole process would have been averted had plaintiffs simply said to the AAA, no, no, no, we got your letter, this is what we want, and if you won't do it, Wyndham, let's talk about a substitute arbitrator. And the plaintiff easily could have, and we could have, I don't mean to say this is one-sided. You've raised a fair point about what did we do, and everybody shares in responsibility. But this didn't need to, the AAA's rejection of the arbitration didn't need to result in immediate federal court litigation. Presumably you wrote the agreement, but they agreed to the agreement, and maybe they thought the AAA is the greatest arbitral forum in the history of humanity and the commercial rules are awesome, and that's what they wanted. That's what they agreed to. They don't want a substitute arbitrator. They want the AAA. And Judge Newsom, that would go to the question of whether the AAA is integral to the party's agreement, and that's been briefed extensively. I think they have a mild disagreement with it, but the AAA, there's nothing about the AAA in this process that has been identified by the other side as critical or integral, as the courts say it, to the process. But I think that's the way legally the issue would evolve. And to the question of how this plays out, I mean, Freeman is a very good example. Mr. Prozenitz and I don't agree on everything, but we agree Freeman's important because Freeman says exactly that under the particular factual circumstances here, the district court did not clearly err in finding that JAMS declined to administer the claim due to SmartPay's refusal to pay the initial filing fee. So the district court here should have taken evidence, allowed discovery to find out the reason. So the plaintiffs or you issue a third-party subpoena to set the deposition of a AAA representative under Rule 30b, Deposition, and you ask him or her, what's the reason? And then you provide evidence, and then they provide evidence, and then the district court holds a hearing and then decides you violated Policy 13.24. And that makes you in default, or it doesn't make you in default. Is the district court acting appropriately within its sphere of authority in that circumstance? In this case, no, only if the district court concluded that the issue it was being asked to address had been delegated to an arbitrator. So the district court would have to confront that issue first, and if the district court addressed the issue as it did here with references to bullying the AAA and indolence and things like that without any facts to back them up, then no, that would be an improper exercise of the district court's authority. But certainly the district court could, under FAA rules, it could say we should have more evidence because I don't have enough to make a judgment here. And I think where the court erred, or at least one of the places where the court erred, was first not addressing the delegability or the delegation of arbitrability issue and in not recognizing that it had no factual basis. There is none to conclude that Wyndham was indolent or that Wyndham had bullied the AAA. Again, Wyndham and plaintiffs are ready, willing, and able to arbitrate this case. All right. Thank you both very much. It's been helpful. Thank you.